**UNITED STATES of America,**
**Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

No. CR 05–07–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Aug. 24, 2006.

---

6. 16 U.S.C. § 470hh (a).

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

ORDER

MOLLOY, Chief Judge.

### I. Introduction

The Defendants have filed a motion to exclude the proffered opinion testimony of Government witness Dr. Daniel Teitelbaum. Dr. Teitelbaum's expert disclosure states that he is prepared to testify regarding a 1978 study he conducted for Defendant Grace involving analysis of chest x-rays of employees at Grace's Libby Mine. Apart from Dr. Teitelbaum's curriculum vitae, the disclosure consists of nothing more than an incomplete version of the report he issued to Defendant Grace on August 25, 1978.[1] The Defendants argue that the Teitelbaum's opinion testimony should be excluded because it lacks any scientific analysis, it is irrelevant to the charges, and some of the opinions have not been adequately disclosed. The Government contends Dr. Teitelbaum's opinion testimony is necessary to explain the findings of his study. For the reasons that follow, the Defendants' motion is granted in part, denied in part and otherwise reserved for trial.

### II. Background

In 1977 Defendant Grace hired Enbionics, a consulting firm specializing in epidemiological studies, to review and compare chest x-rays of Grace workers at the Libby Mine and at another vermiculite mine in Enoree, South Carolina. Dr. Teitelbaum, a medical toxicologist, was the president of Enbionics at that time. The Enbionics study called for two physicians to independently review each x-ray and render an opinion categorizing each as normal, showing asbestos related disease, showing possible asbestos related disease, or showing non-asbestos related disease. Sometimes individual x-rays fit into more than one category. The initial reviews yielded more than eighty percent agreement between the two readers. Differences of opinion between the readers were resolved at a meeting involving the two readers, Dr. Teitelbaum and another person.

On August 25, 1978, Dr. Teitelbaum sent a letter to Defendant Eschenbach explaining the procedure followed in the study and its results. The findings of the readers were attached to the letter in what Dr. Teitelbaum characterized as "a set of summary sheets."[2] The summary is a grid

---

1. Teitelbaum's expert disclosure states, "To the extent Dr. Teitelbaum's testimony constitutes an expert opinion, that opinion is contained in the Enbionics Report attached hereto as Exhibit B, (Trial Exhibit 175)." Teitelbaum Supplemental Disclosure at p. 2.

2. Dr. Teitelbaum's letter to Defendant Eschenbach also included as attachments the original reports prepared by the readers as well as the summary report that resulted from the joint meeting at which the differences between the readers' initial diagnoses were resolved. These reports are not included in

consisting of a list of names of each worker followed by five columns: "Normal," "Asbestos Disease," "Possible Asbestos Disease," "Non Asbestos Disease," and "Followup Required." An "X" appears in at least one column next to each name. Many of the entries contain an "X" in the "Followup Required" column in addition to one of the diagnostic columns.

Dr. Teitelbuam's letter to Eschenbach is brief (fewer than three full-length pages) and consists primarily of a summary of the procedure and the findings and recommendations of the x-ray readers. To the extent Dr. Teitelbaum offers his own opinions in the letter, they are confined to the following paragraph:

> As you indicated before the project began, there is a substantial difference in the attack rates of asbestos and possible asbestos disease between the South Carolina and Montana facilities. In fact, we had only one case of clear asbestos disease in South Carolina and a few cases of possible asbestos disease. There are numerous cases of asbestos disease in Montana. The incidence of the disease is independent of age, since there are a number of quite young individuals with obvious asbestos disease in Montana. Probably the difference lies in total exposure, fiber size, and mineral form.

Teitelbaum Supplemental Disclosure Ex. B.

Teitelbaum's supplemental disclosure goes on to state, "Dr. Teitelbaum will testify regarding follow-up medical data relating to the Enbionics Report," *id.* at p. 2, but the disclosure contains no information, analysis or opinions relating to follow-up medical testing.

The Defendants argue that Teitelbaum's opinion testimony should be excluded under Fed.R.Evid. 702, 401 and 402 and Fed. R.Civ.P. 16(a)(1)(G).

## III.  Analysis

### A.  Legal Standard

Federal Rule of Evidence 702 provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rulings on the admissibility of expert testimony under Rule 702 are committed to the sound discretion of the trial court. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141–42, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court imposed a gatekeeping obligation on trial judges to engage in objective screening designed to ensure that scientific evidence that is put before the jury "is not only relevant, but reliable." 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The threshold questions for admissibility of expert scientific testimony are whether the proffered testimony reflects scientific knowledge and whether it will assist the trier of fact. *Id.* at 592, 113 S.Ct. 2786. The *Daubert* Court instructed that in exercising the "gatekeeper" function of deciding whether to admit such testimony, a trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of

the expert disclosure provided by the Government.

whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593, 113 S.Ct. 2786. An expert's testimony must be grounded in the methods and procedures of science, and must be more than unsupported speculation or subjective belief. *Id.* at 593, 113 S.Ct. 2786. An expert's "bald assurance of validity is not enough." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir.1995) ("*Daubert II*"). A proponent of the testimony does not have the burden of proving that the testimony is scientifically correct, but rather that the testimony, by a preponderance of the evidence, is reliable. The " 'focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.' " *Joiner*, 522 U.S. at 146, 118 S.Ct. 512 (quoting *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786).

The Supreme Court in *Daubert* listed four nonexclusive factors that a trial court might, in the exercise of its discretion, consider to assess reliability: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Id.* at 593–94, 113 S.Ct. 2786.

The Supreme Court revisited admissibility of expert testimony in *Kumho Tire Co. Ltd. v. Carmichael*, and emphasized that trial judges are entitled to broad discretion when discharging their gatekeeping function, and should not mechanically apply the *Daubert* factors to testimony, scientific or otherwise, as if the factors were a "definite checklist or test." 526 U.S. 137, 150–51, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Rather, the gatekeeping inquiry must be tailored to the facts of each case, and a trial judge should apply the *Daubert* factors "where they are reasonable measures of the reliability of expert testimony." *Id.* at 150, 152, 119 S.Ct. 1167. Not only must the trial court be given broad discretion to decide whether an expert's testimony is reliable, it "must have the same kind of latitude in deciding how to test an expert's reliability." *Id.* at 152, 119 S.Ct. 1167. Regardless of the means the court chooses to employ in assessing an expert's testimony, the court must satisfy itself that the expert will adhere to the same standards of "intellectual rigor" in testifying as he would follow when dealing with the same subject matter outside of the courtroom. *Id.*

The 2000 Amendments to the Rule 702 added the requirement that expert testimony be based on "sufficient facts or data." Fed.R.Evid. 702. The amendment requires an analysis of the sufficiency of underlying facts or data that is quantitative rather than qualitative. *See* Advisory Committee Notes to the 2000 Amendments to Rule 702. The sufficiency requirement is set forth in a separate subsection but cannot be divorced from the ultimate inquiry into the reliability of the expert's testimony. *Id.* "The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Advisory Committee Notes to the 2000 Amendments to Rule 702. The *Daubert* Court explained that a directed judgment at trial, rather than pretrial exclusion of evidence, is the proper device for handling scientific proof that meets the standards of Rule 702 but offers no more than a scintilla of evidence in favor of the plaintiff's position. 509 U.S. at 595–596, 113 S.Ct. 2786.

The relevance prong of the *Daubert* test requires a trial court to determine whether the expert testimony is sufficiently tied to

the facts of the case to be of use to the trier of fact in resolving a factual dispute. 509 U.S. at 591, 113 S.Ct. 2786. A court must analyze whether it is proper for the jury to apply an expert's reasoning or methodology to the facts at issue. *Id.* at 591–93, 113 S.Ct. 2786. The evidence must have a valid scientific connection to the disputed material facts in a case. *Id.* at 591, 113 S.Ct. 2786. This ensures a "fit" between the testimony and the issues to be resolved at trial. The trial court's gatekeeper role, however, is not meant to supplant the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786; *see also,* Advisory Committee Notes to the 2000 Amendments to Rule 702 ("[T]his amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert.").

## B. Discussion

### 1. Fed.R.Evid. 702

#### a. Reliability

#### i. Opinion on the varying attack rates of asbestos disease

■ The Defendants argue that Dr. Teitelbaum should be prohibited from giving expert testimony regarding the results of the x-ray review because the Enbionics report contains no analysis that qualifies as "scientific, technical, or other specialized knowledge" as required by Fed. R.Evid. 702. The Defendants complain that the report does not identify the nature or severity of the asbestos disease found, does not explain the methodology used by the radiologists to read the x-rays, and does not indicate whether the radiologists "were certified B-readers." Defs' Br.

at p. 4. For these reasons, the Defendants argue, the Enbionics report "provides no analytical basis for reaching the conclusion that some workers had normal chest x-rays, some had asbestos disease, and some had possible asbestos disease." *Id.*

These arguments by the Defendants are based on an overzealous reading of Rule 702 and *Daubert.* The radiologists who read the x-rays for the Enbionics Study were Dr. Jeffrey Rudikoff and Dr. Neal Goodman. As Dr. Teitelbaum's letter to Eschenbach states, Dr. Rudikoff had at the time years of experience reading x-rays for the Johns–Manville Corporation and Dr. Goodman was at the time of the study employed reading films for Johns–Manville at the corporation's world headquarters. Teitelbaum Supplemental Disclosure Ex. B. It is a reasonable inference that their "methodology" consisted of viewing the films and relying on their training as physicians and years of experience reading chest films to reach conclusions about the presence of asbestos-related disease. Assuming that the findings of radiologists like Drs. Rudikoff and Goodman constitute information of the type reasonably relied upon by medical toxicologists such as Dr. Teitelbaum (a proposition that must be established at trial through Dr. Teitelbaum's testimony or otherwise), those findings may constitute sufficient facts or data to support Dr. Teitelbaum's opinion that there is a difference in the frequency of asbestos disease between the Libby workers and the South Carolina workers. *See* Rule 703, Fed.R.Evid.

There is no dispute that Dr. Teitelbaum is qualified to render such an opinion. The fact that the radiologists upon whose findings Dr. Teitelbaum relied were not presented as "certified B-readers" and did not identify sub-categories of asbestos disease is not a reason to exclude Dr. Teitelbaum's testimony, although those issues

may serve as the fodder for vigorous cross-examination. *See Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. Rule 702 requires that expert testimony be reliable. The information provided in the expert disclosure is sufficient to show that Dr. Teitelbaum's conclusion regarding the varying attack rates of asbestos disease among the workers is reliable.

### ii. Opinion as to the reason for the varying attack rates

■ The Defendants ask the Court to exclude Dr. Teitelbaum's opinion that the difference in the frequency of asbestos disease between Libby workers and South Carolina workers is "[p]robably" due to differences in "total exposure, fiber size, and mineral form." This opinion, Defendants argue, must be excluded because it is not based upon sufficient facts or data. On this issue the Defendants present a compelling argument. Dr. Teitelbaum's report contains no data relating to the comparative exposure of the workers or the sizes and forms of the asbestos fibers to which they were exposed. The opinion, beginning with the word "Probably," its by its own terms speculation. It is an untested hypothesis unsupported by any facts or data. Expert testimony, to be admissible, must offer something more than unsupported speculation or subjective belief. *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786.

The Government argues that evidence of the reliability of Dr. Teitelbaum's opinion lies in the fact the Defendants commissioned his study and did not question its results. As the Government puts it, "Defendants never once before questioned Dr. Teitelbaum's findings or qualifications— until they were indicted. Such silence speaks volumes." Govt's Resp. at p. 3. In fact, the Defendants' silence says nothing about the admissibility of Dr. Teitelbaum's opinions under the Federal Rules of Evidence. The Government appears to be making the point that the Defendants' opposition to Dr. Teitelbaum's testimony is tactical. No doubt it is. These matters have nothing to do with the legal issue, however, which is whether Dr. Teitelbaum's opinion is based on sufficient facts or data.

The Government also argues that the portion of the Enbionics Report containing Dr. Teitelbaum's opinion regarding the reasons for the difference in attack rates is admissible because the report meets the business records exception to the hearsay rule, Fed.R.Evid. 803(6). This is beside the point. The Defendants do not contend that the opinion constitutes inadmissible hearsay, and the fact that the written report might fall within a hearsay exception does not shield the information contained in the report from other evidentiary challenges. The Government has no answer for the Defendants challenge to Dr. Teitelbaum's opinion as to the reasons behind the differing attack rates. The Defendants' motion is granted in this regard.

■ Dr. Teitelbaum's failure to cite sufficient facts or data in support of his opinion on the reasons for the difference in attack rates creates a problem with regard to his testimony at trial. If he testifies only as a fact witness, his testimony is only necessary to lay the foundation for the Enbionics Report and he need not reiterate his conclusions or use his expertise to explain the report and provide context for the jury. This testimony is admissible. However, if the Government seeks to qualify Dr. Teitelbaum as an expert and have him testify as to those reliable opinions that are fairly disclosed and supported in the Enbionics Report, the jury is likely to view all of the conclusions contained in the report as the product of his expertise. This creates a serious risk that Dr. Teitelbaum's opinion regarding the reasons be-

hind the differing attack rates, even if not repeated by Dr. Teitelbaum on the witness stand, will carry the imprimatur of expert testimony in the eyes of the jury.

The problem lies in the fact that the Government cannot decide the purpose for which it intends to use the Enbionics Report. In its brief, the Government suggests that it intends to use Dr. Teitelbaum's testimony to bolster his opinions and make them more credible in eyes of the jury, stating:

> Dr. Teitelbaum's testimony is also necessary to explain to the jury why, based on his expertise, he came to the conclusion that the difference between the findings in Montana and North Carolina [sic] was due to the nature of the tremolite asbestos contamination and not the age of the victims.

Govt's Resp. at p. 8. Elsewhere, the Government abandons any interest in establishing the reliability of the conclusions in the Enbionics Report, and insists that the report will only be used to show that the Defendants were on notice of the dangers of asbestos, such as where it states:

> [T]he report is being offered to show that Defendants Eschenbach and Grace knew of the presence of asbestos and the respective danger it posed. For this reason, it is not being offered for the truth of the matter asserted, and the underlying material Defendants seek is irrelevant as to whether Grace was on notice.

Govt's Resp. at p. 9.

The Government argues on one page that Dr. Teitelbaum's testimony will assist the jury by demonstrating the reliability of the Enbionics Report and argues on the next page that the validity of Enbionics Report is irrelevant. The result is a potential problem under Fed.R.Evid. 403: If the Government is allowed to qualify Dr. Teitelbaum as an expert as well as a fact witness, there is a substantial risk that the jury will be misled into believing that Dr. Teitelbaum's opinion on the reasons behind the differing attack rates is the product of expert scientific study when in truth it is not.

The remedy depends on the purpose to which the Government intends to put the Enbionics Report. If the report is offered only to show that the Defendants were on notice of the dangers of asbestos-contaminated vermiculite, there is no need for Dr. Teitelbaum to testify as an expert. The Enbionics Report speaks for itself and its conclusions are clear; it would not be difficult for jurors to understand how the Defendants are alleged to have been put on notice by the report's contents. If on the other hand the Government wants to offer the Enbionics Report and Teitelbaum's testimony to show the accuracy and reliability of the report's findings, the Rule 403 problem arises. If the Government chooses this latter course and offers the Enbionics Report to show that its findings are accurate and reliable, Teitelbaum may give permissible opinions but may not testify as to his opinion on the reasons for the differing attack rates. The Court will instruct the jury that Dr. Teitelbaum's written opinion on that issue is simply speculation and is not supported by scientific evidence.

#### b. Relevance

The Defendants cite relevance as a separate basis for the exclusion of Dr. Teitelbaum's opinions and the Enbionics Report itself. These arguments are unpersuasive. With regard to the Clean Air Act knowing endangerment charges, the fact that Defendants Eschenbach and Grace received the report is evidence that they were aware of the dangers of exposure to the asbestos found in Libby vermiculite. As it relates to the conspiracy to defraud the government charged in Count I, the evi-

dence is relevant to the allegations that the Defendant's should have disclosed the Enbionics Report under Section 8(e) of the Toxic Substances Control Act. The Enbionics Report is not irrelevant.

## 2. Fed. R. Crim P. 16(a)(1)(G)

The Defendants argue that any testimony by Dr. Teitelbaum as to follow-up medical data must be excluded because his opinions have not been properly disclosed. The Court stated the requirements for expert disclosures in this case in its December 5, 2005 Order *United States v. Grace,* 402 F.Supp.2d 1178 (D.Mont.2005).[3] The Government does not contest the Defendants' contention that Dr. Teitelbaum's follow-up opinions have not been adequately disclosed. The opinions are not summarized in the Supplemental Disclosure, and the Government has provided no supporting data. The motion to exclude Dr. Teitelbaum's opinions regarding follow-up medical data is granted due to the Government's failure to disclose the opinions under Fed.R.Crim.P. 16(a)(1)(G).

## IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendants' motion to exclude the testimony of Dr. Daniel Teitelbaum (Doc. No. 456) is GRANTED in part, DENIED in part and reserved in part as follows. Dr. Teitelbaum may testify as a fact witness. If qualified, he may offer admissible opinion testimony but may not state an opinion as to the reasons for the differing attack rates of asbestos fibers in Libby and South Carolina. The Court will instruct the jury that Dr. Teitelbaum's

written opinion on that issue is not the product of scientific study and may be relied upon only to the extent it shows notice to the Defendants. I will reserve ruling until trial on the admissibility on any other opinion testimony that may be offered. Dated this 24th day of August, 2006.

---

**3.** The Court stated:
Rule 16 requires that the expert summary shall contain a complete statement signed by the expert of all opinions to be expressed and the bases and reasons for the opinions; any data or information considered by the expert in forming the opinions; the qualifications of the expert, including a list of all publications by the expert within the last ten years, and a list of all cases for which the expert has testified as an expert in trial or by deposition in the past four years. 402 F.Supp.2d at 1181.